UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JASON H.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 25-cv-13451<br>Honorable Matthew F. Leitman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 9, 12)**

## I. Introduction

Plaintiff Jason H. appeals the final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 9; ECF No. 12. After review of the record, the Court **RECOMMENDS** that:

- Plaintiff's motion (ECF No. 9) be **DENIED**;

- the Commissioner's motion (ECF No. 12) be **GRANTED**; and
- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II. Background

### A. Plaintiff's Background and Disability Application

Born in January 1982, plaintiff was 40 years old when he applied for DIB and SSI in December 2022, with an alleged disability onset date of June 13, 2022. ECF No. 5-1, PageID.34, 44. He had past relevant work as a department manager. *Id.*, PageID.44. Plaintiff claimed disability from reconstructive surgery on his left foot, back pain, neck pain, hip pain, diabetes, depression, and arthritis. *Id.*, PageID.68.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled. *Id.*, PageID.34, 45. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id.*, PageID.18. Plaintiff timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, he found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 13, 2022. ECF No. 5-1, PageID.36. At the second step, he found that plaintiff had the severe impairments of type 2 diabetes mellitus with retinopathy and neuropathy, Charcot foot and osteomyelitis, and obesity. *Id.*, PageID.37. Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.37-39.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of sedentary work[2]:

> [H]e cannot climb ladders, ropes, or scaffolds. The claimant can also occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. Additionally, he cannot work on wet, shifting, or uneven surfaces. The claimant also cannot work around vibration, at unprotected heights, or around moving mechanical parts. Further, he can avoid ordinary hazards in the workplace such as boxes on the floor and doors ajar.

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling (SSR) 83-10.

*Id.*, PageID.39. At step four, the ALJ found that plaintiff cannot perform any past relevant work. *Id.*, PageID.44. At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that plaintiff could perform, including positions as an order clerk, final assembler, and circuit board inspector. *Id.*, PageID.44-45.

## III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that the Court should remand this matter because (1) the ALJ did not properly evaluate plaintiff's subjective symptoms, (2) substantial evidence does not support the RFC, and (3) the ALJ did not properly evaluate a medical opinion from a treating physician. ECF No. 9, PageID.1029-1036. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Plaintiff first argues that the ALJ did not adequately consider his subjective symptoms. ECF No. 9, PageID.1029-1032. The regulations set

forth a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ evaluates whether objective medical evidence of an underlying condition exists and whether that condition could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p. If so, the ALJ assesses any work-related limitations by determining the intensity, persistence, and limiting effects of these symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p. In sum, ALJs assess whether the symptoms claimed are "consistent with the objective medical and other evidence in the individual's record." SSR 16-3p.

To evaluate the limiting effects of subjective symptoms, ALJs consider all available evidence, including the plaintiff's history, laboratory findings, statements by the plaintiff, and medical opinions. 20 C.F.R. §§ 404.1529(a), 416.929(a). Although a plaintiff's description of his symptoms will "not alone establish that [he is] disabled," *id.*, the ALJ may not disregard the plaintiff's subjective complaints because they lack substantiating objective evidence, SSR 16-3p. Without objective evidence, ALJs are to consider a plaintiff's daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; the type, dosage, and side effects of medication to alleviate symptoms; and

any other treatment or measures used to relieve pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff alleged subjective symptoms of "persistent pain, inability to stand or walk for more than ten to fifteen minutes, balance problems, and the need to elevate his legs due to swelling and diabetic complications." ECF No. 9, PageID.1029-1030; ECF No. 5-1, PageID.58-61. Plaintiff argues that clinical evidence aligns with this testimony, as June 2022 imaging studies showed Charcot arthropathy of his left foot[4] with Lisfranc joint dissociation and "significant diffuse osseous destruction." ECF No. 5-1, PageID.347-348. And treating providers consistently observed a mild rocker-bottom deformity and neuropathy causing diminished sensation in plaintiff's left foot. *Id.*, PageID.657, 661, 697, 906, 910, 914, 918, 929, 935, 942. Plaintiff says these conditions compromise his balance and ability to walk. ECF No. 9, PageID.1030.

The ALJ discussed plaintiff's hearing testimony about his subjective symptoms but concluded that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[4] Charcot foot is a complication of diabetes-related neuropathy that can cause the joints and bone structure of a patient's foot to collapse and can increase the likelihood of infection in the foot. *See* https://my.clevelandclinic.org/health/diseases/15836-charcot-foot (last visited Sept. 21, 2026).

consistent with the medical evidence and other evidence in the record." ECF No. 5-1, PageID.39-40. The ALJ accurately summarized many of plaintiff's medical records and acknowledged that he had Charcot foot and osteomyelitis of the left foot resulting from diabetes. *Id.*, PageID.40-43. The ALJ noted that plaintiff's osteomyelitis—which was confirmed through a bone biopsy performed in July 2022—resolved by November 2022 with a six-week course of IV antibiotics. *Id.*, PageID.40, 43, 565, 660. But imaging of plaintiff's Charcot foot still showed destruction of the midfoot bones and joints. *Id.*, PageID.43, 660. Plaintiff had surgery in July 2023 for the Charcot foot, and the ALJ discussed post-operative records showing that plaintiff was doing well and mostly reported pain ranging from a three or four out of ten.[5] *Id.*, PageID.41-43, 689-701, 905-906, 909-910, 914, 917-918, 928-929. The ALJ considered post-operative imaging showing a midfoot joint healing "in a slightly collapsed fashion" but "otherwise normal post-operative changes and no changes in alignment or new fractures." *Id.*, PageID.42-43, 914, 905-906, 917.

[5] In December 2023, plaintiff rated his pain as a five out of ten. ECF No. 5-1, PageID.915. And in January 2024, plaintiff rated his pain as an eight out of ten after he sustained a soft tissue injury from a fall. *Id.*, PageID.911-914. At plaintiff's next appointment three weeks later, he rated his pain as a four out of ten. *Id.*, PageID.907.

The ALJ discussed plaintiff's type 2 diabetes, which was uncontrolled in May and June 2022 because plaintiff had stopped taking his medication; providers noted an estimated average blood sugar level of 278 and a hemoglobin A1c level of 11.3%. *Id.*, PageID.40-41, 43, 352, 355-356, 365-367, 666-667, 961. The ALJ also noted that plaintiff had diabetic neuropathy causing diminished sensation in his left foot. *Id.*, PageID.41-43, 657, 661, 961. Plaintiff's orthopedist, Dr. David Lemos, M.D., recommended surgery on plaintiff's left foot but declined to perform surgery until plaintiff's A1c levels were below 7.5%. *Id.*, PageID.41, 658, 697, 942. But the ALJ correctly observed that later records showed that plaintiff slowly gained control over his blood sugar and A1c levels with medications, reporting an A1c of 7.2% by July 2023. *Id.*, PageID.42-43, 336-339, 350, 657, 697, 935.

Lastly, the ALJ determined that plaintiff's daily activities conflicted with the alleged severity of his symptoms. *Id.*, PageID.43. The ALJ explained that plaintiff could "perform a wide array of activities," including tending to personal care, driving a car, shopping in stores, managing money, reading, and doing some household chores. *Id.*, PageID.43, 61-62, 272-275.

Plaintiff contends that he required prolonged immobilization and that treating providers have repeatedly observed an abnormal gait. ECF No. 9, PageID.1030. During a June 2022 appointment, Dr. Lemos placed plaintiff's left foot in a cast, ordered that he bear no weight on it, and prescribed crutches and a wheeled knee walker. ECF No. 5-1, PageID.961. Dr. Lemos removed the cast three weeks later. *Id.*, PageID.666. In July 2022, Dr. Lemos observed that plaintiff was walking using a crutch and a CAM walking boot and prescribed a CROW boot instead.[6] *Id.*, PageID.662-663. In September 2022, plaintiff's primary care provider, Carmela Doll, NP, observed a normal gait and station and did not note that plaintiff used a cane or crutch. *Id.*, PageID.343-348. Doll again observed in October 2022 that plaintiff wore a boot but that his gait and station were normal. *Id.*, PageID.336, 339. In December 2022, Dr. Lemos authorized plaintiff to return to work if he wore his CROW boot. *Id.*, PageID.661.

---

[6] A controlled ankle motion (CAM) boot is an "orthotic device prescribed for the management of foot and ankle injuries to reduce ankle range of motion and offload the foot and ankle whilst allowing continued ambulation during recovery." A Charcot restraint orthotic walker (CROW) is "a rigid, custom, full-foot enclosure ankle-foot orthosis." *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC11633339/ (last visited Sept. 21, 2026); https://pubmed.ncbi.nlm.nih.gov/8222450/ (last visited Sept. 21, 2026).

Further references to plaintiff's ambulation concerned only his use of a CROW boot until July 2023, when he was instructed not to bear weight on his left foot following surgery. *Id.*, PageID.657, 661, 691, 697, 942. Two months after surgery, Dr. Lemos ordered plaintiff a new CROW boot. *Id.*, PageID.928-929. Dr. Lemos encouraged plaintiff to find a job involving less walking but authorized him to return to work if he wore the CROW boot or a diabetic shoe. *Id.*

The record thus shows that plaintiff was temporarily ordered not to bear weight on his left foot upon his initial diagnosis in June 2022 and after his surgery in July 2023. Beyond those restrictions, plaintiff walked with a CAM or CROW boot. Although plaintiff contends that he has balance issues, none of the cited medical records reference poor balance. Plaintiff has not shown that using those orthotic devices resulted in functional limitations incompatible with the RFC.

Plaintiff contends that he required a PICC line for IV antibiotics for his osteomyelitis, as well as a bone biopsy and surgery on his left foot. ECF No. 9, PageID.1030-1031. The ALJ discussed those treatments and concluded that the osteomyelitis resolved after a six-week course of antibiotics and that the foot surgery was successful. Plaintiff offers no argument disputing the ALJ's reasoning about osteomyelitis. But he

argues that “postoperative records continued to document pain, swelling, neuropathy, and the need for protective devices such as a CAM boot and CROW walker.” *Id.*, PageID.1031.

As the ALJ correctly noted, post-operative records showed that plaintiff often rated his pain as a three or four out of ten. ECF No. 5-1, PageID.690, 903, 907, 927. Plaintiff rated his pain as an eight out of ten in January 2024, but he had fallen and sustained an acute soft tissue injury that later resolved. *Id.*, PageID.903-915. A December 2023 x-ray shows only a “mild worsening of the soft tissue swelling.” *Id.*, PageID.921. Otherwise, post-operative treatment records do not document swelling until plaintiff fell, and the records following that trauma reflect that plaintiff had “no complaints” and was “doing well.” *Id.*, PageID.905, 909-910, 914. And although plaintiff had left foot neuropathy and wore a CAM or CROW boot, plaintiff has not shown that this resulted in more restrictive functional limitations. *See, e.g.*, *id.*, PageID.906, 909-910, 917-918, 928-929.

Plaintiff also references ongoing wound care, but he offers no citations in support. ECF No. 9, PageID.1030. Two weeks after the July 2022 bone biopsy, the incisions had stopped draining and were “well healed” when the sutures were removed. ECF No. 5-1, PageID.663. In January 2023, Dr. Lemos noted a small ulcer on plaintiff’s foot that had

broken open, but there was no obvious open wound. *Id.*, PageID.657. Two months later, there was no significant ulcer, though plaintiff had a small callus that was "a little bloody" with no drainage. *Id.*, PageID.942. In April 2023, Dr. Lemos again noted no significant ulcer on the left foot and that plaintiff "did previously have a small callus." *Id.*, PageID.697. After the July 2023 surgery, Dr. Lemos noted that the incision was "clean, dry, and intact," with no erythema, induration, or discharge. *Id.*, PageID.690. Later records noted no open wounds or ulcers. *Id.*, PageID.906, 910, 914, 918, 928.

Plaintiff insists that the ALJ "cherry picked" records showing improvement while ignoring overwhelming evidence of greater functional limitations. ECF No. 9, PageID.1031. Plaintiff's reliance on the cited medical records is unavailing because he has not shown that the ALJ's rationale was flawed; instead, he asks the Court impermissibly to reweigh the evidence. *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (arguing that the ALJ "cherry-picked" the record "is seldom successful because crediting it would require a court to re-weigh record evidence"); *Grant v. Comm'r of Soc. Sec.*, No. 22-cv-11211, 2023 WL 2396920, at *4 (E.D. Mich. Feb 13, 2023), *adopted*, 2023 WL 2393642 (E.D. Mich. Mar. 7, 2023) (when the plaintiff failed to show that the ALJ's

analysis was flawed or unsupported, he "essentially asks the Court to reweigh the evidence considered by the ALJ, which is not permitted").

Citing *Rogers v. Comm'r of Soc. Sec.*, plaintiff contends that the ALJ relied on minimal daily activities to discount his subjective symptoms. ECF No. 9, PageID.1031. But *Rogers* is an inapt comparison. There, the ALJ's entire rationale for discrediting the plaintiff's fibromyalgia symptoms was unsound. *Rogers*, 486 F.3d 234, 248-49 (6th Cir. 2007). Although the ALJ noted the lack of objective medical evidence, the Sixth Circuit recognized that fibromyalgia often cannot be diagnosed with objective data. *Id.* The ALJ also mischaracterized the plaintiff's testimony about her daily activities and suggested that light housekeeping, driving for a few minutes, preparing simple meals, and opening a door to let a dog out were akin to normal work activities. *Id.* Unlike *Rogers*, the substantial evidence discussed above supports the ALJ's conclusions about plaintiff's subjective symptoms. And plaintiff's daily activities of tending to personal care, driving a car, shopping in stores, managing money, reading, and doing some household chores bolster that conclusion. *See* ECF No. 5-1, PageID.43, 61-62, 272-275.

**C.**

Plaintiff next contends that substantial evidence does not support the RFC. ECF No. 9, PageID.1032-1035. He maintains that the RFC does not

account for (1) his use of CAM and CROW boots; (2) his need to elevate his legs and change postures to manage his swelling and pain; (3) his balance deficits, abnormal gait, and sensory loss; or (4) his likely absences for medical treatment. *Id.* The Court addresses these issues in turn.

As discussed above, plaintiff has not shown that his use of CAM or CROW boots resulted in functional limitations incompatible with the RFC. Plaintiff maintains that "[t]he *ALJ* did not explain how an individual requiring these protective devices could satisfy the standing and walking demands of sedentary work," or question the VE about the use of these devices on the occupational base. ECF No. 13, PageID.1072 (emphasis added). But *plaintiff* bears the burden of proof throughout the first four steps of the sequential analysis. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008); *Preslar*, 14 F.3d at 1110. Plaintiff failed to satisfy his burden of citing evidence showing how his use of a CAM or CROW boot translated into greater functional limitations. *See Simpkins v. Comm'r of Soc. Sec.*, No. 20-10673, 2021 WL 4198404, at *3 (E.D. Mich. Apr. 8, 2021), *adopted*, 2021 WL 3771874 (E.D. Mich. Aug. 25, 2021).

As for the need to elevate his legs, plaintiff cites no records documenting ongoing swelling or pain. When plaintiff first sought treatment for his foot in June 2022, Dr. Lemos found that his left foot was very

swollen. ECF No. 5-1, PageID.663, 667, 961. None of the cited records dated after September 2022 show significant swelling of the left foot, suggesting that the diabetes medications and IV antibiotics were effective. *See, e.g.*, *id.*, PageID.336-340, 343-349, 656-658, 660-661, 696-698, 934-936, 940-942. Again, a December 2023 x-ray showed only a "mild worsening of the soft tissue swelling," while post-operative treatment records did not document swelling until plaintiff fell in January 2024. *Id.*, PageID.914, 921. The records following that trauma reflect that plaintiff had "no complaints" and was "doing well." *Id.*, PageID.905, 909-910.

Similarly, plaintiff reported pain in June 2022. *Id.*, PageID.666, 961. But from July 2022 through July 2023, he consistently rated his pain as a two or three out of ten. *Id.*, PageID.345, 657, 660, 663, 697, 941. After his surgery, plaintiff most often rated his pain as a three or four out of ten, except when he fell in January 2024. *Id.*, PageID.690, 903, 907, 911-914, 927. None of this evidence shows that plaintiff's foot swelling or pain were so severe that he needed to elevate his legs for most of the day.

In discussing his need to elevate his legs, plaintiff argues:

> Sedentary work does not accommodate leg elevation beyond normal breaks, and an ALJ must evaluate whether a claimant can sustain work activity on a regular and continuing basis. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–49 (6th Cir. 2007); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The Sixth Circuit has recognized that when

> a claimant's medically necessary need to elevate the legs prevents sustained sitting or standing, competitive sedentary employment is precluded. *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 498 (6th Cir. 1985); *see also Williams v. Comm'r of Soc. Sec.*, 2014 WL 1406435, at *8 (E.D. Mich. Apr. 11, 2014). The ALJ's decision contains no discussion reconciling this authority with the evidence of record, further underscoring the absence of a logical bridge.

ECF No. 9, PageID.1034. This paragraph suffers from many flaws. First, it is true that an RFC is an assessment of an individual's ability to work on a regular and continuing basis. SSR 96-8p. But neither *Rogers* nor *Howard* discuss this requirement, as plaintiff asserts.[7] Second, *Wages* does not address the need to elevate one's legs but concludes that having to alternate between sitting and standing may preclude sedentary work. *See generally* 755 F.2d 495 (6th Cir. 1985). And most troubling, *Williams* is a factitious citation; the citation provided is for *Widi v. McNeil*, No. 2:12-CV-00188, 2014 WL 1406435 (D. Me. Apr. 10, 2014), a pro se prisoner civil

---

[7] *Rogers* concerns application of the treating physician rule and the ALJ's improper evaluation of the plaintiff's fibromyalgia symptoms. *See generally* 486 F.3d 234. *Howard* concerns an ALJ's failure to discuss relevant medical evidence bearing on the RFC and the resulting failure to present the VE with a hypothetical matching the plaintiff's abilities. *See generally* 276 F.3d 235 (6th Cir. 2002).

rights action. Because plaintiff fails to cite valid authority in support of his arguments, the Court declines to address them.[8]

Plaintiff contends that the RFC also omits limitations for his "balance deficits, abnormal gait, and sensory loss." ECF No. 9, PageID.1034. As concluded above, plaintiff had only temporary walking restrictions, and no evidence showed that his CAM or CROW boots resulted in greater functional limitations than those in the RFC. Nor do the cited records show that plaintiff had balance issues.

Plaintiff contends that the RFC does not account for his frequent work absences for medical appointments. *Id.*, PageID.1034-1035. "Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-cv-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017).

---

[8] In September 2026, plaintiff's counsel, Erin Rich, moved for leave to file a corrected versions of her motion for summary judgment and reply brief to remove the *Williams* citation. ECF No. 14. Rich sought to correct her filings after she and her firm were sanctioned and fined for filing briefs with factitious citations in two other cases. ECF No. 15, PageID.1082; *Chirece C. v. Comm'r of Soc. Sec.*, No. 25- 11554, ECF No. 20 (E.D. Mich. Sept. 24, 2026); *James F. v. Comm'r of Soc. Sec.*, No. 26-10137, ECF No. 17, PageID.2691-2693 (E.D. Mich. July 13, 2026). The Court granted Rich leave to file her corrected briefs by October 9, 2026. ECF No. 15, PageID.1083. But she filed no corrected briefs by that deadline.

Plaintiff's argument is underdeveloped. He does not discuss the number or frequency of appointments, whether they were medically necessary or relevant to his allegedly disabling conditions, or whether they could be scheduled around work hours. *See Monet v. Comm'r of Soc. Sec.*, No. 20-12484, 2022 WL 298130, at *7 (E.D. Mich. Jan. 13, 2022), *adopted*, 2022 WL 298567 (E.D. Mich. Jan. 31, 2022) (declining to remand on issue of absenteeism when the plaintiff cited medical visits for conditions unrelated to his disability application); *Grant v. Comm'r of Soc. Sec.*, No. 20-10867, 2021 WL 1097338, at *8 (E.D. Mich. Mar. 1, 2021), *adopted*, 2021 WL 1087653 (E.D. Mich. Mar. 22, 2021) ("It is insufficient for plaintiff to argue that…[a] schedule should 'speak for itself' to establish, without objective evidence in the record, that he or she needed that many appointments and therefore, is disabled. Nor can a court 'assume' appointments cannot be made around a work schedule." (cleaned up)). The Court declines to scour the record on plaintiff's behalf. *See Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) ("[T]he Court will not search the record for potential arguments or evidence beneficial to Plaintiff.").

**D.**

Plaintiff next argues that the ALJ improperly evaluated an opinion from Dr. Lemos.[9] ECF No. 9, PageID.1035-1036. ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(a). "But the regulations only require ALJs to discuss the first two—supportability and consistency." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

During a December 2023 appointment, Dr. Lemos stated that plaintiff should continue to wear diabetic shoes, could "return to work as tolerated," and could follow up on an as-needed basis. ECF No. 5-1, PageID.918. The ALJ found Dr. Lemos's opinion "somewhat persuasive," as it aligned

[9] Although the ALJ and plaintiff state that the record at issue was an opinion from Doll, it is a treatment record from Dr. Lemos. ECF No. 5-1, PageID.43 (citing ECF No. 5-1, PageID.918); ECF No. 9, PageID.1035.

with records “noting the claimant’s transition from a Charcot restraint orthotic walker to diabetic shoes with good results.” *Id.*, PageID.43. But the ALJ noted that a medical provider’s statement about whether plaintiff could work—*i.e.*, whether plaintiff is “disabled”— is an issue reserved to the Commissioner. *Id.*

The ALJ was correct that Dr. Lemos’s statement that plaintiff could return to work warrants no weight because it is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.920b(c)(3)(i); *Gross v. Comm’r of Soc. Sec.*, 247 F. Supp. 3d 824, 827 (E.D. Mich. 2017) (provider’s opinion that the plaintiff could not return to work was “not entitled to special deference” because it was an issue reserved to the Commissioner). Even so, plaintiff interprets Dr. Lemos’s opinion that he could return to work “as tolerated” to mean that he had “ongoing functional limitations related to Charcot deformity, neuropathy, and residual pain.” ECF No. 9, PageID.1035; ECF No. 13, PageID.1075. But the language “as tolerated” is ambiguous at best, and Dr. Lemos included no concrete functional restrictions beyond wearing diabetic shoes. *See Howard v. Saul*, No. 18-CV-156, 2019 WL 4060370, at *5 (E.D. Wisc. Aug. 27, 2019) (“While ‘as tolerated’ might not be completely clear, the fact Dr. Masci

believes Howard capable of returning to his present employment does not help Howard's cause.").

Plaintiff argues that Dr. Lemos's opinion should be read in context of the medical records detailed above showing advanced Charcot deformity and joint destruction requiring surgery, rocker-bottom deformity, neuropathy, uncontrolled diabetes, and the need for orthotic devices. ECF No. 9, PageID.1035-1036. As concluded above, substantial evidence supports the ALJ's findings that plaintiff was doing well after surgery and gained better control over his diabetes after restarting medications. And the ALJ was correct that Dr. Lemos's December 2023 treatment notes reflected "good results." An x-ray taken during the visit showed "significant prominent soft tissue plantarly" and that the Lisfranc joint was healed "in a slightly collapsed fashion" but that the surgical removal of the bony growth was successful, with "[n]ormal postoperative changes." ECF No. 5-1, PageID.917.[10] Dr. Lemos noted no breaks in the skin, no tenderness, a

---

[10] Plaintiff contends that a January 8, 2024, x-ray showed "severe degenerative changes with disorganization and subluxation of the midfoot." ECF No. 9, PageID.1036 (citing ECF No. 5-1, PageID.918). But the citation provided is Dr. Lemos's discussion of the x-ray taken in December 2023. ECF No. 5-1, PageID.918. The x-ray taken on January 8 shows the same results as the December 2023 x-ray, and Dr. Lemos confirmed that a comparison of the two showed "no change in alignment and no new fractures." *Id.*, PageID.914.

mild rocker-bottom deformity, decreased sensation in the left foot, and that plaintiff could flex his left ankle. *Id.*, PageID.918.

Plaintiff also faults the ALJ for assigning greater weight to the opinions of state-agency consultants who did not examine him or review records documenting his surgery and post-operative condition. ECF No. 9, PageID.1036. State-agency physicians "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act." SSR 17-2p. ALJs are thus entitled to accord great weight to state-agency physicians if their opinions are supported by the record. *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004).

The state-agency consultants did not consider plaintiff's surgical or post-operative records. Barbara Menzies, M.D., provided her opinion in May 2023, before the surgery took place, and Ashok Sachdev, M.D., never mentioned the surgical records when summarizing the medical evidence he considered in October 2023. ECF No. 5-1, PageID.84-85, 89-95. But as the Commissioner argues, "there is no categorical requirement that the non-treating source's opinion be based on a complete or more detailed and comprehensive case record." *Broughman v. Comm'r of Soc. Sec.*, No. 18-13318, 2020 WL 702809, at *4 (E.D. Mich. Feb. 12, 2020) (quoting *Helm v.*

*Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011)) (cleaned up). An ALJ does not err in relying on opinions from state-agency consultants who have not reviewed the entire record if the ALJ considers the post-dated records in determining the RFC. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). The ALJ adequately discussed plaintiff's post-operative records, as discussed above.

## IV. Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary judgment (ECF No. 9) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 12) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 23, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And

only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as “Objection #1,” “Objection #2,” etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as “Response to Objection #1,” “Response to Objection #2,” etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court’s ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager